815 F.2d 81
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joe P. WILCOX and Wife, Dorothy B. Wilcox, Plaintiffs-Appellants,
v.
FIRST NATIONAL BANK AND TRUST COMPANY; United States of
America; Administrator, Small Business Loan
Administration, Defendants-Appellees.
 No. 85-6132.
 United States Court of Appeals, Sixth Circuit.
 Feb. 16, 1987.
 
 Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 Plaintiffs, Joe Wilcox and his wife, Dorothy, in 1972 unconditionally guaranteed a promissory note in the amount of $255,000 issued by the First National Bank and Trust Company ("Bank") in Princeton, Kentucky, for the benefit of Dee Vee Corporation ("Dee Vee"), closely held and controlled by Joe Wilcox. The underlying loan for the benefit of Dee Vee was guaranteed by the Small Business Administration ("SBA"). It was made to assist Dee Vee's operation of a number of Ben Franklin stores in the area and was secured by equipment, fixtures, furniture, inventory, and other assets of Dee Vee. This inventory had previously been the subject of a security agreement given to the Ben Franklin Division of City Products Corporation.[1]
 
 
 2
 In December of 1974, the plaintiffs sold their interest in Dee Vee to Wilmar Corporation ("Wilmar") with notice to the Bank and the SBA when the then unpaid principal of the note was approximately $207,000. In 1976, Joe Wilcox was terminated by Wilmar, the unpaid balance of the loan then standing at approximately $170,000. Wilcox, on May 1, 1976, wrote the SBA purporting to revoke and terminate the personal guaranty, but this notice and claim were promptly repudiated by the SBA and the Bank.
 
 
 3
 The last payment on the Dee Vee loan was made in December of 1976, at which time the balance remaining was about $143,000. Default was declared on the loan in 1977 and the inventory and assets were sold by private sale to third parties, without notice to the plaintiffs.[2] Proceeds of the sale of all the assets pledged as security at the 1977 private sale amounted to only $182,692, which was placed in escrow at the Bank pending resolution of competing claims by Ben Franklin and the SBA. Ultimately, in 1982, approximately $83,000 of these proceeds were allocated to the SBA, which included interest of nearly $39,000.[3]
 
 
 4
 A matured Union Central Life Insurance Company policy issued on the life of Joe Wilcox, having a value of over $42,000, was in 1982 applied, over plaintiffs' protest, to the unpaid balance on the loan and the personal guaranty. In August of 1983, an SBA loan officer advised plaintiffs that the note was in default and that the unpaid balance, including accrued interest of approximately $75,000, was due and payable.
 
 
 5
 On August 14, 1984, the Wilcoxes filed suit against the SBA and the Bank, demanding, among other things, the proceeds of the insurance policy paid to the SBA, cancellation of the assignment of the other policy, and cancellation of their indebtedness under the guaranty. The SBA counterclaimed, demanding that the Wilcoxes' suit be dismissed, that judgment against the Wilcoxes be entered for the principal and interest outstanding under the Dee Vee loan, and that the court declare the remaining life insurance policy assignment to be enforceable.
 
 
 6
 On August 8, 1985, the defendants filed a motion for summary judgment. On November 14, 1985, Judge Ballantine granted the motion, filed a memorandum opinion, and dismissed the plaintiffs' claim with prejudice. He also, however, denied the SBA's motion for judgment on the counterclaim and certified his order as final and appealable. Plaintiffs timely appealed.
 
 
 7
 Plaintiffs rely upon the following language in the guaranty:
 
 
 8
 In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the Undersigned [Wilcoxes], immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor.... (Emphasis supplied).
 
 
 9
 Since, plaintiffs assert, no written demand was made upon them under the guaranty prior to August of 1983, the six year statute of limitations under 28 U.S.C. Sec. 2401(e) claimed by the SBA to be a bar to this action does not, in fact, bar this claim. The district judge held that plaintiffs' cause of action accrued when their claim to repudiate the guaranty was denied in 1976, more than six years before suit was instituted, and was thus barred. Plaintiffs claim the suit was timely, and also take issue with the reasonableness of the private sale of the collateral by the SBA.
 
 
 10
 Turning next to the plaintiffs' claim that the sale of collateral was not commercially reasonable, the district court, by reference to the commercial code as set out in Kentucky statutes,[4] held that the waiver in the agreement with regard to private disposal of the collateral at the unbridled discretion of the SBA, was ineffectual, and that a sale by a creditor must be reasonable. He therefore held that the SBA must be acting in "good faith" in disposing of the collateral. See United States v. Willis, 593 F.2d 247 (6th Cir.1979). He noted, however, that waiver and estoppel by operation of law may apply in the carrying out of an agreement or transaction involving collateral between a creditor and a debtor. See Nelson v. Monarch Invest. Plan of Henderson, Inc., 452 S.W.2d 375 (Ky.1970).
 
 
 11
 We agree with the result reached by the district court. Plaintiffs have no valid claim, even if not barred by the statute of limitations, to the cancellation of the note or the guaranty, nor to return of the cash value of a life insurance policy realized upon by the SBA. Plaintiffs have no right to set aside assignment of any other policy or collateral given in respect to their transaction with the Bank and the SBA. Plaintiffs are not entitled to the injunctive relief sought against the SBA. Mar v. Kleppe, 520 F.2d 867 (10th Cir.1975). We AFFIRM the district court in this respect.
 
 
 12
 At the same time, on the SBA's counterclaim pursuant to its demand for payment of the balance claimed to be due on the guaranty from the plaintiffs, the district court must properly consider the defense challenging the SBA's good faith, and raising the question whether it acted reasonably in disposition of the collateral.
 
 
 13
 Accordingly, this latter aspect of the case remains for further action in the district court. There was no error in denying the SBA's motion for summary judgment in its counterclaim in this respect.
 
 
 14
 GUY, Circuit Judge, concurring.
 
 
 15
 I agree with the result reached in Judge Wellford's opinion for the reasons he sets forth as well as the slightly different line of reasoning which is set forth below.
 
 
 16
 The central issue presented on appeal is whether the district court correctly concluded that the plaintiffs' claim for rescission of the guaranty agreement was time-barred under the six-year statute of limitations contained in 28 U.S.C. Sec. 2401(a). The district court's conclusion was predicated on the finding that plaintiffs' cause of action arose in May of 1976 when the defendants denied the plaintiffs' "request" for rescission.[1]
 
 
 17
 On appeal, plaintiffs contend that their cause of action did not arise until the Small Business Administration made its demand for payment on the guaranty on August 23, 1983. The authority to which plaintiffs cite supports the proposition that where a demand for payment is a condition precedent to a suit for enforcement of a contract, then the statute of limitations begins to run at the time the demand was made. See 41 Am.Jur.2d, Limitation of Actions Sec. 111. Plaintiffs, however, are not seeking to enforce the guaranty agreement; rather, they want to rescind it. Therefore, the date of the SBA's demand for payment on the guaranty is irrelevant to plaintiffs' claim for rescission.
 
 
 18
 I also cannot separate from the issue of whether this is a late claim the question of whether plaintiffs have stated a claim. Apparently, plaintiffs' argument for rescission is based on the fact that, in February of 1976, Mr. Wilcox was dismissed from his position as president of the Wilmar Corporation which, as successor to the DeeVee Corporation, was the primary debtor. Plaintiffs fail to cite any authority to support the contention that Mr. Wilcox's dismissal from Wilmar relieved him from his contractual obligation to guaranty the loan. Even assuming, arguendo, that the dismissal could be a basis for rescission, then it would logically follow that the plaintiff's claim for rescission arose either when he was fired or, at the latest, when the defendants rejected the "request" for rescission. Accordingly, the district court would have been correct in ruling that plaintiffs' claim was time-barred under the six-year statute of limitations.
 
 
 19
 Plaintiffs also seem to suggest that they are entitled to rescission of the guaranty agreement based on their allegation that the bankruptcy sale of Wilmar's assets was commercially unreasonable. Thus, plaintiffs conclude, they should be excused from their obligation to pay the remainder of the unpaid loan. This argument is without merit. We agree with the district court's conclusion that this issue should be raised as an affirmative defense to the SBA's claim for the remaining balance of the loan. See United States v. Willis, 593 F.2d 247, 254 (6th Cir.1979) (holding that a defense of lack of commercial reasonableness in disposing of collateral could be asserted against a claim by the SBA to recover from individual guarantors of defaulted loans).[2]
 
 
 
 [1]
 The security interest in favor of the Bank provided that the other security interest was not to "exceed the amount of $75,000 during the calendar months of January through June or the amount of $120,000 during the months of July through September." These amount limitations applied to "unpaid balance of principle [sic] and interest secured by said other security interest."
 
 
 [2]
 The guaranty to the SBA provided, among other things, that plaintiffs waived notice, demand, "or other default ... comprised in the collateral," and granted the SBA "full power ... without notice ... to deal in any manner" with the collateral, including disposal by private sale
 
 
 [3]
 This allocation was made in a Kentucky state court
 
 
 [4]
 Ky.Rev.Stat. Sec. 355.9-504(3) and Ky.Rev.Stat. Sec. 355.9-501(3)
 
 
 [1]
 The "request" is more accurately described as a unilateral repudiation of the plaintiffs' personal guaranty of the loan
 
 
 [2]
 In addition, the Willis court observed that a trial judge may award damages to a guarantor if it is determined that the sale of collateral was commercially unreasonable. Id. at 257 (citing U.C.C. Sec. 9-507(1) (comment 1)). Thus, the trial judge in the instant case has the authority to grant damages to the plaintiffs to compensate them for the loss of their insurance policy if he determines that the sale of Wilmar's assets was commercially unreasonable